BACK *v.* J. C. PENNEY Co.

5-2109                                                    334 S. W. 2d 672

Opinion delivered April 11, 1960.

*Rose, Meek, House, Barron & Nash,* for appellant.
*Wright, Harrison, Lindsey & Upton,* for appellee.

6

J. SEABORN HOLT, Associate Justice. This appeal involves the construction and interpretation of the provisions of a lease. Appellants, Edward S. Back, Phillip G. Back and William S. Back as trustees, had leased to appellee, J. C. Penney Company, for a number of years a retail store building at 505 Main Street, Little Rock, Arkansas, which appellants owned. On April 9, 1952, the parties entered into a continuation lease on the property beginning June 1, 1952, for a period of ten (10) years, ending May 31, 1962. The building under lease was to be used by Penney for the sale of ready-to-wear clothing and similar lines of merchandise. The lease provided for a rental which would be three percent (3%) of the monthly net sales of the Penney Store. However, in no event was the rent in any one year to be less than $13,500.00. The lease provided that the Penney Company could, at its option, install a freight elevator and air conditioning to make the building more suitable. Penney, under the terms of the lease, would pay the initial cost and would recoup this capital outlay (or cost), which amount was admitted to be $76,698.75, by deducting one-tenth (1/10th) of the rentals each year in excess of $48,000.00. Penney elected to install the above mentioned items and proceeded to recoup its outlay according to lease provisions. Penney, on January 25, 1958, vacated the premises and continued to pay rent on the basis of $63,216.93, the yearly average, less the sum of $7,669.88 [being one-tenth the cost of improvements]. The contention of appellants, Back trustees, is that Penney should not be allowed to deduct $7,669.88 now that it has quit the premises and the trustees filed suit to recover this amount. The lower court dismissed appellants' complaint and this appeal followed.

For reversal, appellants rely on two points. (1) Upon vacating the leased premises, the J. C. Penney Company was obligated under the lease to pay a sum in lieu of percentage rentals, and the formula for the computation of said sum did not provide for a deduction for the cost of elevator, air conditioning, or other improvements. (2) Any language in the lease intimating that J. C. Penney Company had the right to

withhold for improvements from the sum paid in lieu of percentage rentals after it vacated the premises is in conflict with the formula previously mentioned, and any ambiguity so created should be construed against Penney since its employees prepared the lease.

We do not agree with either of these contentions. They are so related that we will consider them together. The lease, under *IMPROVEMENTS*, relating to Penney's right to deduct one-tenth (1/10th) of the cost of the air conditioning system and the freight elevator, provides: "If, as, and when Tenant shall complete installation of air conditioning and/or a freight elevator, and if the cost thereof shall be determined to be less than the aforesaid sum of Ninety Thousand Dollars ($90,000.00) that Landlord has agreed to contribute towards the cost thereof, then there shall be an adjustment of the amount to be withheld each lease year out of said percentage rentals as aforesaid, to the end that Tenant shall withhold or recover one-tenth (1/10th) of the actual amount so expended by Tenant for each lease year of the term hereof as aforesaid, provided always, however, that Tenant shall, in no event, recover or withhold an amount in excess of the sum actually expended by Tenant in connection with the installation of air conditioning system and/or a freight elevator, or the sum of Ninety Thousand Dollars ($90,000.00), whichever shall be the lesser of the two."

We think there could be no question, therefore, but that the parties clearly intended that Penney be fully reimbursed for the cost of the air conditioning and elevator if percentage rentals due in excess of $48,000.00 annually permitted recoupment, and it is undisputed that the percentage rentals averaging $63,216.93 annually from June 1, 1952 through January 25, 1958 have been paid by Penney to appellant and were sufficiently in excess of $48,000.00 per year to permit recoupment of $7,669.88 annually by Penney.

Appellants made no complaint about deductions under the lease until after Penney vacated the building on January 25, 1958. From that date they complain

about further deductions, or recoupments. After Penney vacated the building, Penney contended that it had the right, under the plain terms of the lease, to continue to deduct $7,669.88 out of its average annual payments of $63,216.93 due to the Backs until it had been fully repaid for the $76,698.75 it had advanced and expended in installing the air conditioning and freight elevator. The lease provided that if Penney vacated the building, the percentage rental formerly used up to the vacation date [January 25, 1958] would not apply but instead the lease provided that the rental should be: ''An amount each month until the end of the term . . . equal to the average of the amounts actually received each month by the Landlord under the foregoing provision for rentals during the period between the beginning of the term of the lease and the time when the Tenant ceases to use the demised premises for its business.'' Clearly, then, under the above language, appellants [Backs] were entitled to receive for the remainder of their lease term what is admittedly being paid to them, namely $55,547.05 cash, which represents the average of $63,216.93 paid to them annually during the period that Penney occupied the building before vacating it, less the amount $7,669.88 deduction provided for. This lease appears to have been carefully drawn and agreed upon by the parties. Its meaning is clear and unambiguous. Under its plain terms we hold, as indicated, that Penney was clearly entitled to the annual recoupment of $7,669.88 until fully reimbursed in the amount of $76,698.75 for the improvements. Appellants will continue to receive, from May 28, 1958 until May 31, 1962, an annual cash rental of $55,547.05 and further will be allowed to retain valuable improvements on their property amounting to $76,698.75, all under a lease which contained a minimum guarantee rental of only $13,500.00 per year.

On the whole case, finding no error, the judgment is affirmed.

GEORGE ROSE SMITH, J., not participating.